## ALBERT SCHULTZE

### *v.*

## LOUISA H. A. SCHULTZE *et al.*

*Filed at Springfield, January 18, 1893.*

1. UNITED STATES TREATY — *liberally construed.* Where a treaty of the United States with a foreign nation admits of two constructions, one restrictive as to the rights that may be claimed under it, and the other liberal, the latter is to be preferred, following the case of *Hauenstein* v. *Lynham*, 100 U. S. 483.

2. ALIEN LAND LAWS — U. S. TREATY WITH BREMEN — *rights of alien heirs thereunder — treaty construed.* By section 7 of the treaty of the United States with the Hanseatic Republic of Bremen, concluded on December 20, 1827, where a citizen of the United States dies intestate, owning land and leaving non-resident alien kindred, residing in and citizens of Bremen, who would be his heirs but for their alienage, there is granted to such kindred the term of three years within which they may dispose of such lands and remove the proceeds.

3. The word "representatives" in the second clause of section 7 of such treaty refers to all who take by will or descent, including devisees and heirs as well as executors and administrators; otherwise there is no antecedent to which the word "said" before the word "heirs" in the third clause can refer. The second clause may be construed to mean that the representatives or heirs of American citizens, being citizens of

Bremen, shall succeed to personal goods. It follows that by the terms of the third clause the heirs of American citizens who are citizens of Bremen have the prescribed term of three years to dispose of real estate, which they would have inherited but for their alienage.

4. SAME — *title of non-resident alien heirs to lands inherited — partition.* Where non-resident alien heirs of an American citizen are granted, by treaty of the United States, three years within which to sell lands they would have inherited but for their alienage, and to remove the proceeds, they will take a fee in such land determinable by the non-exercise of the power of sale within three years. They will have such an interest in the land as will entitle them to maintain a proceeding for partition.

5. In such a case the fee vests in the non-resident alien heirs, and they will have the rights of ownership in the property and all the advantages of its use and possession for the purpose of making sale of the same. By such a treaty the alien heir is clothed for the period granted, for the purpose of making sale, with the same rights that he would enjoy if he was a resident heir, being subject simply to the obligation to sell and convey the fee to some other party capable of holding. The right to sell and dispose of land at pleasure and dispose of the proceeds can not be exercised unless the donee is vested with title or the complete ownership.

6. SAME — *treaty suspends the statute.* The effect of the treaty of the United States with Bremen is to suspend, during the period of three years, the operation of the alien law of this State, which makes non-resident aliens incapable of taking lands by descent; and the right of the resident heir or of the heirs capable of taking under the State law, and the right of the State or county to take the land by escheat in default of heirs capable of holding the same, are also suspended during the term of three years named in the treaty.

7. STATUTES CONSTRUED — *sec.* 1, *chap.* 39, *R. S.— heirship of surviving husband or widow.* The statute (chap. 39, sec. 1) which makes the surviving husband or widow of a decedent an heir when there is no descendant left, applies to cases where the surviving widow or husband is capable of taking, and not to cases where there is incapacity by reason of alienage.

8. PARTIES — *bill for partition — estate will not escheat where any heir is capable of taking.* In the absence of any treaty of the United States with a foreign country providing otherwise, the interest that a non-resident alien heir of a citizen of this State would take but for his alienage, will not escheat to the State or the county, if there is a resident heir capable of taking by descent, as such heir will take the entire estate of such decedent, and hence the State or county is not a necessary party to a bill for partition.

APPEAL from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

This is a bill, filed on December 11, 1891, in the Circuit Court of Cook county by Louisa H. A. Schultze, the complainant below, who is one of the appellees here, against Albert Schultze, one of the defendants below and the appellant here, and Anna Schomberg, one of the defendants below and one of the appellees here, for the partition of certain land in that county. The bill alleges, that George Ludwig Schultze died intestate and without issue on July 5, 1891, owning the premises in controversy, and leaving him surviving the complainant, his widow, and Albert Schultze, his brother, and Anna Schomberg, his sister, as his only heirs at law; that the deceased intestate was a citizen of the United States; that the defendant, Albert Schultze, is also a citizen of the United States residing in Illinois; that the complainant is a resident of the Hanseatic Republic of Bremen in the Empire of Germany; that the defendant, Anna Schomberg, resides in Bremen, Germany; that no other persons except the complainant and the defendants have any interest in said premises; that by the death of said George they became seized in fee as tenants in common by descent in the proportions provided by law (the widow of one-half and dower in the other half, and the brother and sister of one-half subject to the widow's dower); that the dower has not been admeasured, etc.

The defendant, Schomberg, filed an answer, substantially admitting the allegations of the bill. The defendant, Albert Schultze, filed a plea, setting up that the deceased was a citizen of the United States at the time of his purchase of the land and up to his death; that the complainant is, as to the United States, a non-resident alien, and before filing her bill resided, and still resides, in the Hanseatic Republic of Bremen in the German Empire, and was, at the time of said death, and still is, a citizen of said republic; that, by an act of the legislature

of Illinois, in force in July, 1887, and at the time of said death, it was provided that non-resident aliens, etc., shall not be capable of acquiring title to or taking or holding any lands in this State either by descent, devise, purchase or otherwise, except, etc., reference being made to said act for its provisions; that the defendant pleads said act and prays judgment, etc.

The cause was heard upon the bill and answer of Anna Schomberg and the replication thereto, and upon said plea. The court held that the plea was not sufficient in law to bar complainant's right to the relief prayed, and overruled the same, the defendant Albert Schultze excepting to said ruling and praying an appeal. After hearing testimony, the court found the allegations of the bill to be true; that partition should be made and dower assigned; that commissioners be appointed, etc. The case is brought by appeal to this court, and by consent to the Central Grand Division.

Mr. ARTHUR SCHROEDER, for the appellant :

Sec. 1, chap. 6, relating to inheritance by aliens, by plain language prohibits non-resident aliens from acquiring and holding title to real estate in this State by descent, devise, purchase or otherwise. Such Alien act is not local or a special law, but is general in its nature and scope.

As bearing on the construction and validity of the Alien act in force in this State, reference is made to *Mick* v. *Mick*, 10 Wend. 379 ; *Kennedy* v. *Wood*, 20 Wend. 230 ; *Connolly* v. *Smith*, 21 Wend. 59; *People* v. *Coughlin*, 2 Hill, 67 ; *Moore* v. *White*, 6 Johns. Ch. 360 ; *Gansevert* v. *Lunn*, 3 Johns. Cas. 109.

Mr. WILLIAM VOCKE and Mr. JULIAN W. MACK, for the appellees :

The statute of this State relating to aliens is void because it is in conflict with various treaties made by the government of the United States, which are by the constitution declared to be

a part of the supreme law of the land. Const. of U. S., art.
VI; *Hauenstein* v. *Lynham*, 100 U. S. 483 ; 8 Opinions of
Att'y General, 417; *Chirac* v. *Chirac*, 2 Wheat. 259 ; *Ware*
v. *Hylton*, 3 Dall. 199 ; *People* v. *Gerke*, 5 Cal. 381.

It is in conflict with a treaty made with the German Empire,
and violates the principles of international comity; Treaty
between the U. S. and German Empire, proclaimed December
11, 1871, art. 10, last paragraph ; Wheaton's International
Law, par. 2, chap. 11, sec. 4; Field's International Code, chap.
26, secs. 334–336.

Being void as to citizens of those countries with which the
United States has entered into treaties, but affecting citizens
of other countries with whom no treaty relations exist, it
operates as a special law changing the statute of descent as
against the latter.

The construction of the statute should be a liberal one so far
as it affects private rights.

As to the common law of England, relating to aliens, see
Blackst. Com., B. I, p. 371, and B. II, p. 249–251, Cooley's ed.

As to the common law of Virginia and Illinois, see 1 Minor's
Inst., 144 ; 1 Tucker's Com. on Blackst., 65 *et seq. ; Hubbard*
v. *Goodwin*, 3 Leigh, 508.

Statutes of Illinois: Territorial Act of Sept. 17, 1807;
Illinois Session Laws, 1819, Feb. 6, p. 6 ; Id. 1827, Feb. 7, p.
49 ; Id. 1829, Jan. 23, p. 207 ; Revised Statutes, 1845, chap.
4 ; Ill. Session Laws, 1851, Feb. 7, p. 149 ; Id. 1887, June 16,
p. 5 ; Id. 1891, p. 3.

In order to arrive at the proper interpretation of a stat-
ute, the courts will, in doubtful cases, strain the meaning of
words, transpose or interpose words, change their ordinary
meaning or insert modifying clauses. See *Kilgour* v. *Gockley*,
83 Ill. 109 ; *County of Perry* v. *Jefferson*, 94 id. 214 ; *People*
v. *Hoffman*, 97 id. 234.

Forfeitures are never enforced by the courts, unless the
legislature has a plain constitutional right to enact them, and

exercising this right, has enacted them in plain and unequivocal language.

The statute is loosely drawn,˙and taking away private rights should be most carefully considered.

The plea offers no defense to the bill, because appellants have at least a defeasible title. *Curlow* v. *Aultman Co.*, 28 Neb. 672; *Bone* v. *Canal Co.*, 5 Atl. Rep. 751; *Hickory Farm Oil Co.* v. *Railroad*, 32 Fed. Rep. 22.

Mr. Justice Magruder delivered the opinion of the Court:

The main questions involved in this case are settled by the opinion filed at this term in the case of *Wunderle* v. *Wunderle*, *ante*, page 40. In that case, the non-resident aliens claiming to take lands by descent in Illinois were held to be incapable of inheriting under the act of 1887, there being no treaty, permitting them to acquire or hold lands in this country, between the Grand Duchy of Baden of which they were subjects, and the United States of America. Here, however, the appellees, who are non-resident aliens, are citizens of the Hanseatic Republic of Bremen, between which Republic and the United States a convention or treaty was concluded on December 20, 1827, and afterwards ratified and proclaimed. Article 7 of said treaty is as follows: "The citizens of each of the contracting parties shall have power to dispose of their personal goods, within the jurisdiction of the other, by sale, donation, testament, or otherwise; and their representatives, being citizens of the other party, shall succeed to their said personal goods, whether by testament or *ab intestato*, and they may take possession thereof, either by themselves or others acting for them, and dispose of the same at their will, paying such duties only as the inhabitants of the country, wherein said goods are, shall be subject to pay in like cases; and if, in the case of real estate, the said heirs would be prevented from entering into the possession of the inheritance on account of their character of aliens, there shall be granted to them the term of three years to dis-

pose of the same, as they may think proper, and to withdraw the proceeds without molestation and exempt from all duties of detraction on the part of the Governments of the respective States."

The language of this article is not as clear in its meaning as the provision quoted in *Wunderle* v. *Wunderle, supra,* which allows a reasonable time to sell and remove the proceeds " where on the death of *any person* holding real estate within the territories of the one party, such real estate would, by the laws of the land, descend on a citizen or subject of the other were he not disqualified by alienage, etc." But the rule laid down by the Supreme Court of the United States is that, " where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it, and the other liberal, the latter is to be preferred." (*Hauenstein* v. *Lynham,* 100 U. S. 483). If the language of article 7 be given a liberal construction, it may be held to mean, that, where a citizen of the United States dies intestate owning land and leaving non-resident alien kindred, residing in and citizens of Bremen, who would be his heirs but for their alienage, there will be granted to such kindred the term of three years within which they may dispose of such lands and remove the proceeds. The word, " representatives " in the second clause of the article must refer to all who take by will or descent, including devisees and heirs, as well as executors and administrators; otherwise, there would be no antecedent, to which the word " said " before the word " heirs " in the third clause could be made to refer. The second clause can be construed to mean, that the representatives or heirs of American citizens being citizens of Bremen shall succeed to personal goods. It follows that, by the terms of the third clause, the heirs of American citizens who are citizens of Bremen shall have the prescribed term of three years to dispose of real estate, etc.

The appellees are, therefore, entitled, under said article 7 of the treaty, to the privilege of selling the interests in the land

in controversy, which they would have inherited from the deceased George Ludwig Schultze under the laws of Illinois but for their alienage, and of removing such proceeds of sale, provided they do so within three years. The question then arises : what interest in the land is vested in non-resident aliens by the grant to them of a term of three years within which they can sell such land and remove the proceeds ?

It would seem, that, in such case, the alien heirs take a fee determinable by the non-exercise of the power of sale within three years. (*Kull* v. *Kull*, 37 Hun, 476). By the terms of the treaty the power to dispose of the land and appropriate its proceeds is granted in positive terms. Such a power to sell cannot be exercised unless the donee is vested with the fee, or, in other words, the complete ownership. It has been said that, "it is an affront to common sense to say that a man has no property in that which he may sell when he chooses, and dispose of the proceeds at his pleasure." (*Kull* v. *Kull, supra*). In the case of *Kull* v. *Kull, supra*, where the proceeding, like the present one, was for partition, the precise question now under consideration was involved, and it was there held, that the fee vested in the non-resident alien ; that the treaty intended to confer upon him the rights of ownership in the property and the advantages of its use and possession for the purpose of making the sale ; that, under the provisions of the treaty, the alien heir was clothed, for the period granted for the purpose of making the sale, with the same rights he would enjoy if he were a resident heir, being subject simply to the obligation to sell and convey the fee to some other party capable of holding.

It follows, that the non-resident aliens, thus vested with the power of sale under the treaty, can bring a partition suit for the purpose of having their interests set apart in severalty. The right to bring such a suit is involved in the ownership of the determinable fee ; and the partition of the property will make it easier to dispose of it in accordance with the permis-

sion granted by the treaty. An undivided interest in land is always less salable than a definite portion thereof as fixed by a division.

The effect of the treaty is to suspend, during the period of three years, the operation of the alien law of this State, which makes the non-resident aliens incapable of taking land by descent. The rights of the resident heirs, or the heirs capable of taking under the State law, and the right of the State or county to take the land by escheat in default of heirs capable of holding the same, are also suspended during the term of three years named in the treaty. (*Kull* v. *Kull, supra*). If, at the end of the three years, no sale is made by the non-resident aliens, the State law again comes into force and directs the disposition of the property. (Laws of 1887, page 5).

In the case at bar, upon the showing made by the present record, the land could not escheat to the State or the county, because appellant, the brother of the deceased, is a citizen of the United States and a resident of Illinois, and, therefore, capable of inheriting according to the views expressed in *Wunderle* v. *Wunderle*. By clause second of section 1 of the Statute of Descents in this State, it is provided, that estates shall descend, " when there is no child of the intestate, nor descendant of such child, and no widow or surviving husband, then to the parents, *brothers* and sisters of the deceased," etc. (Rev. Stat. chap. 39, sec. 1). It being alleged in the bill and also in the plea that the widow, Louisa H. A. Schultze, one of the appellees herein, is a citizen of Bremen, no question as to the effect of the citizenship of her deceased husband upon her alleged alienage is presented in this case. The statute evidently refers to cases where the surviving widow or husband is capable of taking, and not to cases where there is incapacity by reason of alienage. Hence, it is manifest that appellant would take the whole of the land under the State law if the treaty were not in the way. As the appellant is a party to the partition proceeding, he will be bound by it. As it is not

shown that the land will escheat for failure of heirs capable of inheriting, it cannot be said that the State or county is a necessary party.

For the reasons here stated, we think that the plea of the appellant was not sufficient to bar the right to the relief prayed for in the bill.

Accordingly, the decree of the Circuit Court is affirmed.

*Decree affirmed.*