## Eliza J. Jaques v. William H. Ballard.

### Gen. No. 11,062.

1. PROMISSORY NOTE—*suit upon a, after death of payee.* An executrix, to whom a promissory note, payable to the order of her testator, has been bequeathed, which was not in the lifetime of such testator indorsed by him, and which was not, before the settlement of the estate and her discharge, indorsed by such executrix, cannot maintain an action at law thereon in her own individual name.

2. PROMISSORY NOTE—*effect of bequest of, upon the title to.* Notwithstanding a promissory note is bequeathed to a particular person, the legal title thereto, upon the death of the testator, passes to the executor or executrix.

Action of assumpsit. Appeal from the Superior Court of Cook County: the Hon. RUSSELL P. GOODWIN, Judge, presiding. Heard in this court at the March term, 1903. Affirmed. Opinion filed January 14, 1904.

F. M. WILLIAMS, for appellant.

DANIEL F. FLANNERY, for appellee.

The following statement of the case by appellant is admitted by appellee's counsel to be substantially correct:

"On January 6, 1894, the appellee, William H. Ballard, executed and delivered to Frank G. Jaques, (now deceased), the husband of appellant, his promissory note for $5,000 for a valuable consideration, which said note was made payable to the order of Frank G. Jaques, and payable to the Banker's National Bank of Chicago, with six per cent interest from the date thereof, due six months after the date thereof. Shortly thereafter William H. Ballard left the city of Chicago, and has since spent most of his time in Los Angeles, California. At the time of the commencement of this suit he appeared in Chicago, and personal service was had upon him. Meantime, to wit, on the 14th day of November, 1896, Frank G. Jaques, the payee of this note, departed this life at Urbana, Illinois, in Champaign County, where he resided, testate. In his last will and testament he designated the appellant, Eliza J. Jaques, his administratrix, and in said last will and testament, after providing for the payment of all his debts, the disposition of certain real estate owned jointly by himself and others, and a few specific legacies, he, in the fifth and sixth paragraphs of his will, provided as follows:

' *Fifth.* Relying upon my wife that she will look after the welfare of our children, and that she will see to the execution of this will according to the true intent and spirit thereof, I give, devise and bequeath to my wife, Eliza J. Jaques, all the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature or kind soever, and wherever the same may be situated.

' *Sixth.* I hereby nominate and appoint my said wife to be executrix of this, my last will and testament, with full power to sell and convey all my real and personal estate wheresoever situated, at public or private sale, at such times and upon such terms as to her shall seem best, full power being granted to her to make any and all conveyances necessary to carry out the terms of this will and to settle my estate, etc.'

The note in question was part of the personalty left by Frank G. Jaques and in the possession of his executrix at the time she entered upon her duties as such executrix. Letters testamentary were issued to her by said County Court of Champaign County, on the 23rd day of November, 1896, and said will admitted to probate. On the 19th day of January, A. D. 1900, at the January term of said court, said administratrix presented for approval her final account current and report and asked to be discharged from her official duties as such executrix, having carried into effect all the provisions of said will, and the heirs having entered their appearance in writing and consented to the discharge of said executrix, and the court having examined the account, duly entered the order approving the said account, discharging her as executrix and declaring said estate duly closed, the said note being then in her possession.

During her administration of said estate she did not, at any time, as executrix of the last will and testament of Frank G. Jaques, indorse said note to herself in her individual capacity.

On the 10th day of October, 1900, suit was commenced upon said note by Eliza J. Jaques, individually, against the maker thereof in the Superior Court."

The cause was tried by the court, without a jury, by agreement of the parties. When the unindorsed note was offered in evidence the appellee objected on the ground that it had not been indorsed either by Frank G. Jaques, the payee, or by appellant, in her representative capacity as executrix. The court reserved ruling on the objection, but

finally, when the plaintiff rested, sustained it, excluded the plaintiff's evidence, found for the defendant, and gave judgment for the defendant for costs.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The only question in this case is, whether an executrix to whom a promissory note, payable to the order of her testator, has been bequeathed, and which was not indorsed by the testator in his lifetime, nor by the executrix in her representative capacity, as executrix, can, after her final account as executrix has been approved, and she discharged as executrix, maintain an action at law on the note in her individual name.

Counsel for appellant, in support of the proposition that appellant may maintain her suit, relies solely on sections 1 and 2 of the Statute of Wills, contending that by the bequest of the note to appellant, the legal title to the note was vested in her as legatee.   This contention cannot prevail.

Appellant claims and sues in her individual name.   Her claim is not as assignee of the note, but merely as legatee under the will, and that, as legatee, she has the legal title. In McLean County Coal Co. v. Honora Long, 91 Ill. 617, John Long, in his lifetime, sued the coal company to recover the value of a quantity of coal which the company had mined and removed from his land, and converted to its own use, and recovered judgment, which was appealed to the Supreme Court, which court reversed the judgment and remanded the cause.   Pending the interval between the reversal of the judgment and the redocketing of the cause in the trial court, John Long died, having, by will, devised and bequeathed all his property to his wife, Honora Long; and, when the cause was redocketed, she was substituted as plaintiff; and, on second trial, recovered judgment.   The judgment was reversed, on the ground that Honora Long could not maintain the action, the court saying:

" Had Long in his lifetime sold this claim, would any one contend that the purchaser could have maintained an action in his own name?   Or, suppose he had bequeathed this claim

to some one else, and willed the remainder of his property to appellee, would any one suppose that the legatee could sue and recover in his own name? Had Long bequeathed to appellee notes or contracts, does any one suppose she would thereby derive authority to sue? The will does not vest the legal title to a cause of action in the legatee, any more than would his assignment of such a claim in his lifetime. The appointment of an executor to carry out the provisions of the will, vests the title to the goods, chattels and choses in action in the executor, as a *quasi* trustee, for the use of the creditors, distributees and legatees. He can maintain trover, replevin, or other appropriate action for the recovery of the personal property, or to recover damages for its wrongful injury or destruction. The legatee cannot maintain such actions, and the same is true of choses in action. These are elementary rules that need no discussion."

Sections 4 and 5 of chapter 98 of the statute are as follows:

" Sec. 4. Any such note, bond, bill, or other instrument in writing, made payable to any person named as payee therein, shall be assignable, by indorsement thereon, under the hand of such person, and of his assignees, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee successively.

" Sec. 5. Any assignee to whom such sum of money or personal property is, by such indorsement or indorsements, made payable, or in case of the death of such assignee, his executor or administrator, may, in his own name, institute and maintain the same kind of action, for the recovery thereof, against the person who made and executed any such note, bond, bill or other instrument in writing, or against his heirs, executors or administrators, as might have been maintained against him by the obligee or payee, in case the same had not been assigned; and in every such action, in which judgment shall be given for the plaintiff, he shall recover his damages and costs of suit, as in other cases."

Section 4 is held to be so exclusive of all modes of assignment save that prescribed, that the assignment of a note cannot be made by the payee or assignee of the note, by an . instrument separate from the note, so as to vest the legal

title in the assignee. Ryan v. May, 14 Ill. 49; Chickering v. Raymond, 15 Ill. 362; Badgley v. Votrain, 68 Ill. 25; Keeler v. Campbell, 24 Ill. 288; Packer v. Roberts, 140 Ill. 671.

Appellant, being the executrix of the will, the legal title to the note vested in her, as executrix, and, while she remained executrix, she could have maintained an action on it. McLean Coal Co. v. Long, *supra;* Makepeace v. Moore, 5 Gilm. 474.

But the will does not vest the legal title to a note in the executor in his private or individual capacity, so that he may maintain a suit on it, merely as an individual, or otherwise than in his representative capacity, as executor.

The judgment will be affirmed.

*Affirmed.*